Lawrence CANTOR, d/b/a Selden Drug Company, Individually and on behalf of all other retail sellers of light bulbs similarly situated, Plaintiff,

v.

The DETROIT EDISON COMPANY, a Michigan Corporation, Defendant.

Civ. A. No. 4-70026.

United States District Court, E. D. Michigan, S. D.

July 2, 1974.

David L. Nelson-Sommers, Schwartz, Silver, Schwartz, Tyler & Gordon, P. C., Southfield, Mich., Fohrman, Lurie, Holstein, Sklar & Cottle, Ltd., Boehm & Weinstein, Chartered, Chicago, Ill., for plaintiff.

Jerry S. Cohen, Herbert E. Milstein, Michael D. Hausfeld, Washington, D. C., Leon S. Cohan, Christopher C. Nern, Legal Dept., Detroit Edison Co., Detroit, Mich., for defendant.

## MEMORANDUM OPINION

FEIKENS, District Judge.

Plaintiff, the owner of a drug store, sells electric light bulbs and brings this antitrust case charging that the defendant utility company has damaged him in his business.[1] The defendant, The Detroit Edison Company, supplies residential subscribers with electric light bulbs for such homes. Plaintiff claims that this anticompetitive practice injures him since he must sell his light bulbs while

---

1. The complaint purports to be a class action suit, but no class has been certified.

defendant replaces these bulbs without charge when they burn out, and thus he contends defendant has violated both the Sherman and the Clayton Acts (more specifically, Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 3 of the Clayton Act, 15 U.S.C. § 14). Defendant has moved for summary judgment contending that it is shielded from liability under these federal statutes in that the utility is completely regulated by the Michigan Public Service Commission—that this involvement by the Commission in its business affairs constitues "state action". It claims arguendo that it is not in violation of these statutes but that if it is in fact in violation, it is shielded from liability.

Plaintiff contends that defendant instituted the free light bulb plan for the sole purpose of increasing electrical consumption, a purely private motive, and that at best the Michigan Public Service Commission has rubber-stamped this plan. He adds that the Michigan Public Service Commission receives only sketchy data from defendant regarding this plan, that the Commission has never conducted open hearings on the light bulb program and that it does not regulate any of the administrative details of the program, such as bulb life and wattage.

Defendant argues that Michigan law gives the Commission plenary power to regulate utility companies. M.C.L.A. § 460.6 provides:

> "It is hereby vested with power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, conditions of service and all other matters pertaining to the formation, operation or direction of such public utilities."

Defendant says that the Commission issued its order U–3910, dated August 19, 1972, under the authority conferred upon it by this statute and that the order made "lamp supply" a mandatory service under the approved rate structure. Defendant contends that it cannot abandon that service unilaterally and that it must obtain a superseding ruling if it wished so to do. In support of this observation it cites its bulb program for commercial subscribers. Here, before issuing order U–1791 in 1964 giving to the defendant the right to discontinue this specific program, the Commission required the defendant to supply it with substantial financial information including data on the direct costs of that plan.

Thus the question which must be decided in order to determine whether summary judgment lies is whether the defendant's light bulb program can be characterized as state activity or private activity. If this light bulb program is in law state activity, summary judgment in favor of the defendant would be appropriate since in such instances the utility would be shielded from claimed antitrust violations.

In the lead case, Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L. Ed. 315 (1942), the United States Supreme Court held that a cooperative price fixing agreement among California raisin growers did not violate federal antitrust laws if the agreement "derived its authority and its efficacy from the legislative command of the state and was not intended to become effective without that command". 317 U.S. at 350, 63 S.Ct. at 313. Cases interpreting *Parker* in the context of utility regulation have generally reached the same result. When a state agency acts affirmatively in approving rates and practices of a utility, there is no antitrust liability.

> "Our view is that the *Parker* exclusion applies to the *rates and practices* of public utilities enjoying monopoly status under state policy when their rates and practices are subjected to meaningful regulation and supervision by the state to the end that they are the result of the considered judgment of the state regulatory authority." Gas Light v. Georgia Power, 440 F.2d 1135 (5th Cir. 1971) (emphasis supplied).

This rate structure theory has been succinctly stated:

"If its actions were occasioned by adherence to the rules and regulations of its operative tariff, then it is shielded from liability for any possible antitrust violation." Business Aides v. Chesapeake Telephone, 480 F.2d 754 (4th Cir. 1973) at 756.

*See also* Allstate v. Lanier, 361 F.2d 870 (4th Cir. 1966); Marnell v. United Parcel, 260 F.Supp. 391 (N.D.Cal.1966).

■ Applying these principles to the case at bar, it appears that the defendant furnished the Commission with data including information on the free bulb exchange program from which the Commission derived a comprehensive schedule of rates and services. Then, after conducting its own investigation and hearings, the Commission ordered specific tariffs, making this plan mandatory for residential subscribers. Defendant cannot discontinue this light bulb program while continuing to charge the approved rate.

It also appears that under M.C.L.A. § 460.6 the Commission is given continuing jurisdiction to supervise the "rates", "services" and "operation" of a utility such as defendant and under M.C.L.A. § 460.557 any consumer is given the right to challenge the "service rendered" in proceedings before the Commission. The court finds, therefore, that the affirmative action of the Commission in approving the rate structure and the continuing supervision of the defendant by the Commission put this case squarely within the *Parker* doctrine.

Plaintiff also contends that a state must consider the effects of a regulated practice on competition before enacting it. To this effect he cites two categories of cases: those involving large corporate mergers [International Telephone v. General Telephone, 351 F.Supp. 1153 (D.Hawaii 1972) and United States v.

Pacific Southwest Airlines, 358 F.Supp. 1224 (C.D.Cal.1973)], and those involving either fraud or collusive bidding [Woods Exploration v. Aluminum Company of America, 438 F.2d 1286 (5th Cir. 1971) and Whitten v. Paddock Pools, 424 F.2d 25 (1st Cir. 1970)].

The case at bar is clearly distinguishable. Despite plaintiff's allegation that defendant is "hiding" the true costs of the bulb program, this court can find no fraud of the type involved in *Woods.* Nor is this a case involving bidding of any type. The telephone and airline cases cited by plaintiff involve situations where one regulated enterprise is attempting to expand by buying or merging with another. In those cases it was necessary to evaluate the effect on competition of the proposed change. That was the central issue.

■ Here, defendant has already obtained a franchise to do business in every municipality in which it operates, and M.C.L.A. § 460.502 et seq. provides that any utility seeking to introduce new services or facilities in an area already served must first obtain a certificate of public convenience and necessity. The court agrees with plaintiff that a state should consider the effects on competition of facilities such as these. But it is the effect of the entire project which must be examined, and this is done in proceedings involving franchises and certificates of convenience. Neither statute, case law nor common sense requires the state to scrutinize each small facet of a comprehensive scheme for its effect on competition. And certainly the court should not step in when the Commission has not even been approached by plaintiff.

Defendant's motion for summary judgment is hereby granted.

An appropriate order may be submitted.