LITTON SYSTEMS, INC.,
Plaintiff-Appellant,

v.

SOUTHWESTERN BELL TELEPHONE
COMPANY, Defendant-Appellee.

No. 75–1065.

United States Court of Appeals,
Fifth Circuit.

Sept. 23, 1976.
Rehearing En Banc Denied
Nov. 16, 1976.

Fletcher Etheridge, Houston, Tex., Theodore F. Craver, Beverly Hills, Cal., for plaintiff-appellant.

Leroy Jeffers, Richard P. Keeton, David T. Hedges, Jr., James M. Shatto, Houston, Tex., for defendant-appellee.

Before WISDOM and THORNBERRY,* Circuit Judges, and LYNNE, District Judge.

WISDOM, Circuit Judge:

Litton Systems, Inc. (Litton) brought suit against Southwestern Bell Telephone Co. (Bell) under the Sherman Act,[1] alleging unlawful tying and predatory pricing, and seeking treble damages and injunctive relief. Litton and Bell both manufacture and sell or lease private branch exchange (PBX) telephone equipment. Bell provides, as well, general telephone service. Litton's complaint charged that Bell was offering a package deal of branch exchange equipment and telephone service together and that Bell was predatorily pricing that package so as to prevent or hamper competition from Litton.

Bell's rates for all services, including the package deal about which Litton complains, are and have been embodied in tariffs filed with and approved by regulatory commissions in Missouri, Kansas, Oklahoma, Arkansas, and Texas.[2] Bell moved to dismiss the complaint on the ground that its rates and selling practices were not subject to the Sherman Act because they were the products of state action. *See Parker v. Brown*, 1943, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315. In the alternative, Bell moved for a stay of proceedings pending the reference of Litton's complaints to the regulatory agencies involved, four statewide agencies (in Missouri, Kansas, Oklahoma, and Arkansas) and about 400 municipal agencies (in Texas).[3] The district court denied the motion to dismiss as premature. It granted, however, Bell's motion to stay proceedings under the doctrine of primary jurisdiction, *citing Ricci v. Chicago Mercantile Exchange*, 1973, 409 U.S. 289, 93 S.Ct. 573,

---

* Judge Thornberry was a member of the panel that heard oral arguments but due to illness did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d).

1. 15 U.S.C. §§ 1 et seq. The cause of action is based specifically on 15 U.S.C. § 2, which prohibits attempting to monopolize "any part of the trade or commerce among the several States".

2. In Arkansas, the Arkansas Corporation Commission is empowered to assure that "[a]ll charges, tolls, fares and rates shall be just and reasonable". Ark.Stat.Ann. §§ 73–116.

In Kansas, a public utility is required to set "just and reasonable rates" and to "make just and reasonable rules, classifications and regulations". Unduly preferential rates and regulations are prohibited. The State Corporation Commission has power to review utility rates and regulations and to alter them if, after a hearing, they are found to violate these requirements. *See* Kan.Stat.Ann. arts. 66–107, –110.

Missouri requires all charges made by a telephone corporation to be "just and reasonable and not more than allowed by law or by order or decision of the [Public Service] commission". Mo.Stat.Ann. § 392.200–1.

The Oklahoma Constitution gives the Corporation Commission power to supervise and regulate "transmission companies" for the purpose of "correcting abuses and preventing unjust discrimination and extortion by such companies". The Commission has the power to authorize rates and regulations that are "reasonable and just". *See* Oklahoma Const., Art. 9, § 18.

When the instant case was filed, Texas allowed the "governing body of all incorporated cities and towns" to regulate the rates charged by telephone companies, with the proviso that such rates could not "yield more than a fair return" nor, in any event, yield more than an 8% per annum return. *See* V.A.T.S. Art. 1119. The law also provided that "[a]ll extortionate and unreasonable rates charged by public utility corporations" were unlawful. Texas has since enacted a law that vests regulatory power in a Public Utility Commission. The Commission has the power to find that a rate charged by a public utility is "unreasonable or in any way in violation of any provision of law . .". Tex.Rev.Civ.Stat.Ann. art. 1446c, § 42.

3. After the institution of this litigation, Texas created a statewide regulatory commission, *see* Tex.Rev.Civ.Stat.Ann. art. 1446c; note 2 *supra*, thus reducing the magnitude of the proposed reference. This change does not affect the result reached in this case.

34 L.Ed.2d 525. Litton appealed and this Court rejected Bell's motions to dismiss for lack of jurisdiction. We now reverse the stay and remand the cause to the district court for further proceedings.

## I.

Generally speaking, the doctrine of primary jurisdiction may be applied when a suit is brought in federal court and that court is of the opinion that the suit ought to have been prosecuted exclusively or initially before an administrative body. There are two major reasons for this "ought". First, the statute creating and giving power to the administrative body may have expressly or implicitly withdrawn judicial jurisdiction over the area of the complaint. Second, to accommodate two seemingly conflicting statutes—e. g., one bolstering free competition and the other regulating certain aspects of a particular industry—the court may want to defer in the first instance to the administrative agency's construction of the regulatory statute the enforcement of which is its responsibility. This case involves the second category of reasons and all future references in this opinion to the doctrine of primary jurisdiction will be limited to that category.[4]

Bell argues that the doctrine of primary jurisdiction was properly applied in this case. It relies principally on *Carter v. American Telephone and Telegraph Co.,* 5 Cir. 1966, 365 F.2d 486, *cert. denied,* 385 U.S. 1008, 87 S.Ct. 714, 17 L.Ed.2d 546 and *Ricci, supra,* to support this position.

In *Carter,* this Court held that the doctrine of primary jurisdiction was applicable in a suit alleging antitrust violations of a telephone company under the jurisdiction of the Federal Communications Commission. Carter was the manufacturer of a device that connected, via a two-radio communications system, a telephone caller and another person located away from the receiving tel-

ephone. The defendant, in a tariff filed with and approved by the FCC, prohibited its customers from attaching devices such as Carter's to the defendant's equipment. We held that "the tariff [was] inescapably at the center of this controversy", that the plaintiff could not attack the defendant's practices without attacking the tariff, and that the FCC, with the power to prescribe practices which were "just, fair and reasonable", 365 F.2d at 494, should be entitled to rule on the plaintiff's contentions before the court would consider them.

*Ricci* was an antitrust suit against a commodity exchange governed by the Commodity Exchange Act[5] and subject to the jurisdiction of the Commodity Exchange Commission. The plaintiff alleged that he had been wrongfully deprived of a seat on the Exchange by the conspiratorial actions of a third party and the Exchange in violation both of the rules of the Exchange and of the Commodity Exchange Act. The Exchange was required by the Act to enforce rules and regulations, not disapproved by the Secretary of Agriculture, which related to terms and conditions in contracts of sale or other trading requirements and which provided minimum financial standards and related reporting requirements. The Supreme Court upheld a stay pending reference to the Commodity Exchange Commission. The stay was necessary because the conduct of which the plaintiff complained was "seemingly within the reach of the antitrust laws [while] . . . also at least arguably protected . . . by another regulatory statute enacted by Congress". The Commission's determination whether the defendants had in fact violated a valid rule of the Exchange would throw important light on the question, for ultimate judicial resolution, of the effect of the Commodity Exchange Act on the antitrust laws in the circumstances of the case.

Both *Carter* and *Ricci* are distinguishable from the instant case. Both cases applied

---

**4.** The doctrine has been described as "judicial legislation". *See* Latta, *Primary Jurisdiction in the Regulated Industries and the Antitrust Laws,* 30 U.Cinn.L.Rev. 261, 262 (1961). This characterization is not meant to denigrate the

doctrine, but is meant solely to place it in the proper legal prospective.

**5.** 7 U.S.C. §§ 1 *et seq.*

the doctrine of primary jurisdiction in the context of an attempt to accommodate *federal* antitrust policy with *federal* regulatory policy. Indeed, the Supreme Court characterized the question before it in *Ricci* as follows:

> The problem . . . is recurring. It arises when conduct seemingly within the reach of the antitrust laws is also at least arguably protected or prohibited by another regulatory statute *enacted by Congress.*

(Footnote omitted; emphasis added.)[6] Moreover, most commentators analyzing the problems inherent in the doctrine of primary jurisdiction speak of that doctrine as a means of accommodating the sometimes conflicting goals of the same sovereign. *See, e. g.,* Jaffe, *Primary Jurisdiction Reconsidered—The Antitrust Laws,* 102 U.Pa.L.Rev. 577, 581 (1974); Convisser, *Primary Jurisdiction: The Rule and its Rationalizations,* 65 Yale L.J. 315, 336–37 (1956).[7]

It would be easy to end the analysis here, so distinguishing *Carter* and *Ricci,* and to declare that the doctrine of primary jurisdiction was never intended to apply to the ordering of responsibility between state and federal tribunals. Although some cases have applied the doctrine in this context, *see, e. g., Industrial Communications Systems, Inc. v. Pacific Telephone and Telegraph Co.,* 9 Cir. 1974, 505 F.2d 152, we do not believe that the question has been decisively answered and we do not answer it here. Instead, assuming *arguendo* that the

doctrine applies when state regulatory agencies are involved, we hold that prior reference was incorrectly ordered in this case.

The Supreme Court has instructed that, in every case involving the possibility of the application of the doctrine, the question is whether the purpose served by the doctrine will be aided by its application. *See United States v. Western P. R. R.,* 1956, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126. We turn then to *Ricci* for the starting place in our analysis of the purposes served by the doctrine.

The *Ricci* Court articulated related premises on which rested its determination that a stay of the antitrust action was proper. The Court stated

(1) That it will be essential for the antitrust court to determine whether the Commodity Exchange Act or any of its provisions are "incompatible with the maintenance of an antitrust action," . . . (2) that some facets of the dispute between Ricci and the Exchange are within the statutory jurisdiction of the Commodity Exchange Commission; and (3) that adjudication of that dispute by the Commission promises to be of material aid in resolving the immunity question.

As no argument to the contrary has been made, we assume that premise (2) exists here. Without state agency authority to consider antitrust questions, there could be no meaningful purpose served by prior ref-

6. *See also International Brotherhood of Boilermakers v. Hardeman,* 1971, 401 U.S. 233, 238, 91 S.Ct. 609, 28 L.Ed.2d 10 and *United States v. Western P. R. R.,* 1956, 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126, *citing Far East Conference v. United States,* 1952, 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576, in which the Supreme Court observed that "in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies *created by Congress* for regulating the subject matter should not be passed over". (Emphasis added.)

7. *But see* Note, *Primary Jurisdiction—Effect of Administrative Remedies on the Jurisdiction of Courts,* 51 Harv.L.Rev. 1251, 1253 (1938) ("Especially important is judicial self-limitation

through application of the primary jurisdiction rule when a federal court is called upon to enjoin state regulations".) The Note cited, in support of this statement, *Board of Railroad Commissioners v. Great Northern Railway,* 1930, 281 U.S. 412, 50 S.Ct. 391, 74 L.Ed. 936. That case stands, however, for the proposition that primary jurisdiction is appropriate when a federal agency, the ICC, has the power to order a state regulatory board to reduce intrastate rates. The plaintiff had sought an injunction of the rates set by the state board pending ICC consideration of the issue. The case seems to be miscited, first, because it does not involve the conflict between state regulation and a nonregulatory federal policy, and second, because the reference was not to the state board but to a federal agency.

erence. What is important for us in the *Ricci* analysis is that the asserted defense of immunity from the antitrust laws was a large factor in the Supreme Court's decision to remit the case to administrative jurisdiction. Had there not been the possibility of immunity—of the Commodity Exchange Act overriding in some way the Sherman Act—there would have been much less reason to solicit the Commission's view of the dispute. Moreover, prior reference was of material aid in resolving the immunity issue. Here, as in *Ricci*, the front-line defense against the private antitrust action is one of immunity,[8] and one must surmise that reference to the state agencies was considered necessary because of the light such reference might throw on the immunity question.

Bell contends that the states are requiring it to behave the way it does, that state interests would be jeopardized if the antitrust court were to go forward, that uniformity of behavior—a value assumably vaunted by the states—would cease were the antitrust court to find against the defendant. Although Litton makes a strong case that there is no uniformity in the existing state systems, we do not believe that this is the most important observation that could be made. What should be understood is that Bell is contending that it should not be controlled by the Sherman Act, because the state is compelling it to charge certain rates and employ certain marketing practices. To determine the propriety of granting a stay for purposes of the primary jurisdiction doctrine, we must examine more closely the nature of Bell's state action defense and consider whether that defense would be materially aided by prior reference.

*Parker v. Brown* involved a state scheme regulating the raisin industry. The purpose of the authorizing statute was to "conserve the agricultural wealth of the State" and to "prevent economic waste in the marketing of its agricultural products". A state Agricultural Prorate Advisory Commission was appointed to formulate, on finding that such action would serve the purposes of the statute, a marketing program for a raisin-producing zone. Programs so formulated and consented to by a specified number of producers were to be enforced by criminal sanctions. The effect of the scheme was to limit the crop that was marketed and to raise the price of raisins.

The Supreme Court reversed a three-judge court injunction prohibiting enforcement of the scheme, on the ground that the Sherman Act does not apply to a state or its officers or agents with respect to activities directed by the state legislature.[9] The Sherman Act does not explicitly refer to the states. Only explicit congressional direction could justify applying the Act against them.

The *Parker* doctrine has been extended by lower federal courts to shield private action actually required by a public agency, *see, e. g., Gas Light Co. v. Georgia Power Co.,* 5 Cir. 1971, 440 F.2d 1135, *cert. denied,* 404 U.S. 1062, 92 S.Ct. 732, 30 L.Ed.2d 750, or even embodied in a tariff merely approved by a state agency, *see Washington Gas Light Co. v. Virginia Electric & Power Co.,* 4 Cir. 1971, 438 F.2d 248. Bell's immunity defense relies primarily on cases such as these. But the Supreme Court has recently narrowed the ambit of *Parker*.[10]

In *Goldfarb v. Virginia State Bar*, 1975, 421 U.S. 773, 791, 95 S.Ct. 2004, 44 L.Ed.2d 572, a unanimous Court held that the mini-

---

**8.** The "immunity" is actually the nonapplicability of the Sherman Act to state action, at least where the defendant is a state or division of a state. *See* Handler, *The Current Attack on the* Parker v. Brown *State Action Doctrine,* 76 Colum.L.Rev. 1 (1976).

**9.** An alternative basis for the decision was the apparent holding that the state's action was not a contract, agreement or conspiracy, in restraint of trade. *See* 317 U.S. at 352, 63 S.Ct.

at 314, 87 L.Ed. at 327; Note, *The State Action Exemption and Antitrust Enforcement under the Federal Trade Commission Act,* 89 Harv.L. Rev. 715, 720.

**10.** The *Parker* opinion itself noted that "a state does not give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful". *See* 317 U.S. at 351, 63 S.Ct. at 314, 87 L.Ed. at 326.

mum fee schedules of a county bar association were not protected from antitrust attack. The state bar association had approved the fee schedules and the Virginia Supreme Court had allowed the state bar to issue ethical opinions approving the schedules. The Court observed that the threshold question "is whether the activity is *required* by a State acting as sovereign", 421 U.S. at 790, 95 S.Ct. at 2015 (emphasis added). It was "not enough that . . . anticompetitive conduct [was] 'prompted' by state action . . .". *Id.* More recently, in *Cantor v. The Detroit Edison Company*, 1976, —— U.S. ——, 96 S.Ct. 3110, 49 L.Ed.2d ——, the Court held that the Michigan Public Service Commission's approval of an electrical utility's tariff that provided for the tying of light bulbs to electric service did not immunize the utility from the Sherman Act. *Parker* was read as applying only to state officials and not private parties. Although the Court acknowledged that "there may be cases in which the State's participation in [an anticompetitive] decision is so dominant that it would be unfair to hold a private party responsible for his conduct implementing it," the record before it disclosed "no such unfairness". *Id.* at ——, 96 S.Ct. at 3119.

▇▇▇ Here, as in *Cantor*, it appears that the challenged tariffs were, first, the result of the utility's initiative,[11] and, second, routinely acquiesced in by each regulatory board.[12] Whether the tariffs fall within the limited state action immunity doctrine is a question that we do not reach; it is for the trial court, in the first instance, to make this determination. Our observations about the doctrine reveal, however, that prior reference could serve no useful purpose here. Were Litton required to attack the tariffs before each state commission, the balance upon which Bell's action is, under *Cantor*, to be weighed would not be significantly affected. When the case came back to federal court, Bell would be defending a system that it devised and for which it garnered near-automatic approval from the state agencies. The doctrine of primary jurisdiction was intended to serve judicial accommodation of conflicting regulatory and antitrust policies. Such accommodation is unnecessary in this context, however, because it is Bell's conduct that is being challenged, not the conduct or policy of any state agency or official.[13]

It is significant to note that in *Cantor* itself, where the Supreme Court put this important limitation on the *Parker* doctrine, no suggestion was made by the Court that prior reference to the Michigan Public Service Commission would serve any desirable purpose.[14] As the Court observed in

---

11. The motivating force appears to have been the FCC's ruling that Bell could not prohibit the attachment of other's equipment to its lines. *In the matter of Carterfone*, 1968, 13 F.C.C.2d 420.

12. Justice Douglas observed, in a different context, that "state regulation of utilities has largely made state commissions prisoners of utilities". *Jackson v. Metropolitan Edison Co.*, 1974, 419 U.S. 345, 363, 95 S.Ct. 449, 459, 42 L.Ed.2d 477 (dissenting opinion).

13. Litton argues, citing *Carnation Co. v. Pacific Westbound Conf.*, 1966, 383 U.S. 213, 222, 86 S.Ct. 781, 15 L.Ed.2d 709, that primary jurisdiction could not apply with respect to the damages portion of its lawsuit even if it must apply to the injunctive portion of its lawsuit. There the Supreme Court, in staying rather than dismissing an antitrust action because proceedings before the Federal Maritime Commission had already begun, observed that an award of damages for past and completed conduct would not interfere with any future action of the Commission. *See also Allied Air Freight v. Pan American World Airways, Inc.*, 2 Cir. 1968, 393 F.2d 441; *Marnell v. United Parcel Serv. of America*, N.D.Cal.1966, 260 F.Supp. 391. Although we hold that prior reference is improper here for both injunctive and monetary purposes, we also hold that Litton's argument with respect to Bell's past conduct is correct. It provides an alternative basis for reversing that part of the stay order relating to Litton's damages claim.

14. To be sure, it does not appear that any motion for prior reference was made in *Cantor*. *See* Eastern District of Michigan's opinion at 392 F.Supp. 1110. Nevertheless, the failure of the district court to rule on the issue did not preclude the *Ricci* Court of Appeals from ordering prior reference, *see* 7 Cir. 1971, 447 F.2d 713, and, in view of the importance the Supreme Court placed on the doctrine in *Ricci*, it is to be expected that that Court would have applied it again in *Cantor* had it been applicable. *See also Jeffrey v. Southwestern Bell Tel-*

*Cantor*, there are two possible reasons for exempting private conduct from the Sherman Act: unfairness to the private party if such conduct is required by a state and the supposed intention of the Sherman Act itself not to apply to inconsistently regulated areas of the economy. Prior reference was, apparently, unnecessary to the Court's ability to reject both reasons in *Cantor*. First, as we have noted, it is obvious from the record that the tying arrangements had not been coerced by the regulating agency and that the utility could not, therefore, assert that Sherman Act liability would be unfair. Second, the Court was able to determine from "Michigan's regulatory scheme" and the record that the challenged light bulb exchange program was unnecessary to Michigan's ability to regulate effectively its electric utilities. —— U.S. at ——, 96 S.Ct. at 3121. *Cantor* suggests that prior reference to state agencies will not materially aid in answering the "immunity" question.

We hold that the district court should have been able to make the same type of determination in this case without resort to prior reference. The manner in which Bell tariffs were acquiesced in by the state agencies strongly suggests that the tying of PBX equipment to general telephone service was not considered necessary to the effective regulation of telephone service. No state statute, case, regulation, or ruling

has been cited as suggesting even remotely that the acquiescence in the asserted tying arrangements is the product of any coherent state policy. Bell's effort to seek prior recourse at this stage is not designed to clarify the purpose of such policy nor the need for the arrangements to effectuate that policy; its effect is to serve as a delaying action. It is arguable that Bell desires to establish a regulatory necessity for its practices after itself inventing and establishing those very practices. Bell will have the opportunity to establish such necessity. But the issue should be tried in federal court, without prior reference. The state agencies, by their silence with respect to the PBX equipment issue, have "spoken" once, and the laudable goal of "judicial accommodation" would become a nightmare of judicial paralysis were we now to force the agencies to suggest reasons why the tying of PBX equipment to general telephone service may be necessary to the regulation of that service.[15]

A direction of prior reference here would seriously impair the ability of the district court to enforce federal antitrust policy without providing sufficient countervailing benefits. Especially after the decision in *Cantor*, we are compelled to hold that the district court's order requiring prior reference was an abuse of discretion.[16] That order is reversed.

---

ephone Co., 5 Cir. 1975, 518 F.2d 1129, where we upheld, before *Cantor*, a state action immunity defense. This decision was easily made on the record in the district court and did not require prior resort to the regulating state agencies.

**15.** The appellee argues that, if the district court were to find against it on the implied immunity defense and to further find that its behavior violated the Sherman Act, a potential conflict with the state agencies would result. This type of conflict was not significant to the *Cantor* Court. *See* —— U.S. at ——, 96 S.Ct. at 3121. The district court's order here could simply direct the defendant to file satisfactory tariffs with the state commissions and retain jurisdiction pending the agencies' consideration of the new tariffs. If the tariffs without the tying provisions are rejected, the district court would then be able to decide anew whether an implied antitrust immunity exists. State officers enforcing the regulatory schemes could be joined

as parties-defendant at this point in the proceedings.

**16.** None of Bell's other arguments in favor of the district court's treatment of this case are persuasive. First, Bell asserts that the state tribunals should have an opportunity to determine the "validity" of Bell's tariffs. This determination has already been made, however; the tariffs were assented to by the state and local tribunals as "just and reasonable" within the meaning of state and local law. *Cf. Public Utilities Commission v. United States*, 1958, 355 U.S. 534, 539, 78 S.Ct. 446, 2 L.Ed.2d 470 (state regulatory statute clearly intended to apply to United States' prior reference not necessary to decide issue). It is, indeed, this assent by the states that forms the basis of Bell's immunity defense.

Bell also asserts that there is a need for the application of state agency expertise. The agencies may, as Bell suggests, be able to call

## II.

We must address ourselves to the question of this Court's jurisdiction over the instant appeal. The appellee, Bell, moved this Court to dismiss the appeal for lack of jurisdiction. This motion urged that the district court's granting of a stay was not a final order appealable under 28 U.S.C. § 1291 and that it was not a grant or denial of an injunction for purposes of 28 U.S.C. § 1292(a).[17] Since the district court did not certify this case as an appealable order under 28 U.S.C. § 1292(b), there was assertedly no basis for appellate jurisdiction. A screening panel of this Court denied Bell's motion to dismiss. Bell moved for reconsideration of its motion, and that motion was similarly denied by this Court. We again hold that there is appellate jurisdiction.

The jurisdictional basis present in this case is commonly referred to as the "collateral order doctrine". This doctrine was first fully articulated in *Cohen v. Beneficial Finance Corp.*, 1949, 337 U.S. 54, 69 S.Ct. 1221, 93 L.Ed. 1528. The plaintiff there brought a stockholder's derivative suit, under diversity jurisdiction, and the defendant moved the federal district court to require the plaintiff to post a bond for the defendant's expenses in accordance with New Jersey law. The district court denied this motion and the defendant sought to appeal. The Supreme Court held that the denial of the motion was appealable because it was a final disposition of an asserted right that was not an ingredient of the cause of action and because that denial did not require

consideration with that cause of action. The refusal to accept appellate jurisdiction would, therefore, have prevented any effective review of the order.

This Court has commented upon the genius of *Cohen*. In *21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement System*, 5 Cir. 1968, 404 F.2d 31, we observed that seemingly interlocutory orders have, under *Cohen*, been held appealable on the theory that irreparable injury will result from dismissal of the appeal when the order terminates an issue separable from the main controversy. Our understanding of the collateral order doctrine was more explicitly spelled out in *Diaz v. Southern Drilling Co.*, 5 Cir. 1970, 427 F.2d 1118, 1123, *cert. denied*, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115. There we stated three requirements of the collateral order doctrine:

(1) The substance of collateral orders must be independent and easily separable from the substance of other claims, (2) at least part of the question of collateralness is determined by the need to secure prompt review in order to protect important interests of any party, and (3) the finality issue is to be examined in light of practical, rather than narrowly technical, considerations.

We recognize, of course, that the *Cohen* doctrine must be kept within narrow bounds to avoid swallowing, by exception, the final judgment rule. *See Weight Watchers of Philadelphia, Inc. v. Weight Watchers International, Inc.*, 2 Cir. 1972,

---

upon expert advice and counsel and may have broad investigatory powers that would aid a court in deciding the antitrust issues. But it can hardly be argued that the court would be incapacitated in the absence of such assistance. In nonregulated industries, a court must be able to decide difficult accounting and economic issues in determining whether a product was predatorily priced. *See, e. g.*, Areeda & Turner, *Predatory Pricing and Related Practices under Section 2 of the Sherman Act*, 88 Harv.L.Rev. 697, 700–20 (1975).

**17.** In *Carter*, jurisdiction over the appeal was found because the plaintiff had asked for a preliminary injunction and the stay amounted to a denial of that injunction. Therefore, 28 U.S.C. § 1292(a) provided jurisdiction. Here,

however, Litton did not seek a preliminary injunction.

Litton has also argued that § 1292(a) jurisdiction exists because the stay falls into a narrow category over which courts have recognized jurisdiction. In order for the appeal to fit this category, Litton would have to have sought predominantly "legal" relief and the stay would have had to have been granted to allow the defendant to prove an "equitable" defense. *See Jackson Brewing Co. v. Clarke*, 5 Cir. 1962, 303 F.2d 844, *cert. denied*, 371 U.S. 891, 83 S.Ct. 190, 9 L.Ed.2d 124. Because of our holding that jurisdiction exists under the collateral order doctrine, we do not reach the issue whether this appeal falls into the limited category outlined in *Jackson*.

455 F.2d 770, 773. But it is also important to avoid gagging on salutary exceptions to the final judgment rule by making those bounds too constricted. Thus, we have recently relied upon *Cohen* and *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 1962, 370 U.S. 713, 715 n.2, 82 S.Ct. 1294, 8 L.Ed.2d 794, in holding appealable a stay order, entered in a 42 U.S.C. § 1983 employment discrimination case, pending exhaustion of EEOC remedies unlikely to occur for at least eighteen months. *See Hines v. D'Artois*, 5 Cir. 1976, 531 F.2d 726 (1976). Applying here the three principles set forth in *Diaz*, we hold that we have jurisdiction over the appeal.

First, we believe that this stay order is clearly separable or "collateral". The order goes not toward the merits of the underlying antitrust claim, nor does it go to the merits of Bell's state action immunity defense. It pertains, instead, to the manner in which the case is to be tried in federal court. This, like the denial of the motion in *Cohen*, is sufficiently collateral to the cause of action so that its determination in an immediate appeal does not substantially threaten the interests of the judicial system in avoiding piece-meal appeals. Subsequent determinations in this litigation will not again involve the propriety or impropriety of the stay order. *Cf. Hackett v. General Host Corp.*, 3 Cir. 1972, 455 F.2d 618, 627 (Rosenn, J., dissenting). The decision to remit a federal court plaintiff to state agencies is analogous to a decision that a defendant, contrary to his assertions, is subject to proceedings in a state court. In those cases the Supreme Court has held that the jurisdictional decision is sufficiently collateral from the underlying merits that it may be entitled to review before the entire case is finally decided. *See Local 438, Construction Laborers v. Curry*, 1963, 371 U.S. 542, 83 S.Ct. 531, 9 L.Ed.2d 514; *Mercantile National Bank v. Langdau*, 1963, 371 U.S. 555, 558, 83 S.Ct. 520, 9 L.Ed.2d 523.[18] As do the cited cases, the instant case involves an order deciding, not what the merits of the case are, but where and how the case should proceed. This type of order meets the requirement of collaterality.

The second requirement under *Diaz* requires the court to examine the "need to secure prompt review". Our decision on the merits of this appeal shows that the stay needlessly affects Litton's right to have its antitrust claim adjudicated by a federal court. If the state commissions were forced to rule on the plaintiff's antitrust contentions here, no federal court could try an antitrust case against a regulated party prior to proceedings before state agencies. Such stay orders might remove, therefore, the federal courts from effective jurisdiction. Moreover, Litton would be forced to take action that could, in all likelihood, serve to bolster Bell's defense against Litton's suit by making state approval of the challenged tariffs appear more considered. When Litton is entitled to try a case in a federal court, this type of harm would be irreparable. That Litton may prevail before the state agencies does not mitigate the nature of this harm.

The third *Diaz* requirement is that the question of appealability be viewed practically and not technically. *See Gillespie v. United States Steel Corp.*, 1964, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199. The Court in *Gillespie* stated that

> whether a ruling is "final" within the meaning of § 1291 is frequently so close a question that decision of that issue either way can be supported with equally forceful arguments, and that it is impossible to devise a formula to resolve all marginal cases coming within what might be called the "twilight zone" of finality. Because of this difficulty this Court has held that the requirement of finality is to be given a "practical rather than a technical construction." . . . [I]n deciding the

18. The Supreme Court was construing the finality requirement of 28 U.S.C. § 1257 in these two cases. The Court noted, however, in *Radio Station WOW v. Johnson*, 1945, 326 U.S. 120, 124, 65 S.Ct. 1475, 89 L.Ed. 2092, that a stricter finality requirement would exist for that statute than for the statute allowing appeals from the federal district courts to the courts of appeals.

question of finality the most important competing considerations are "the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other."

379 U.S. at 152–53, 85 S.Ct. at 311, *quoting Cohen,* 337 U.S. at 546, 69 S.Ct. 1221, *and Dickinson v. Petroleum Conversion Corp.,* 1950, 338 U.S. 507, 511, 70 S.Ct. 322, 94 L.Ed. 299. *See also General Motors Corp. v. City of New York,* 2 Cir. 1974, 501 F.2d 639, 659 (Mansfield, J., concurring); *Premium Service Corp. v. Sperry & Hutchinson Co.,* 9 Cir. 1975, 511 F.2d 225, 227. Looking at the practicalities of this case we believe that the exercise of appellate jurisdiction is required. There is substantial danger of denying Litton timely justice if we refuse jurisdiction. Nor does there seem to be particularly great cost in allowing this appeal.

Although this Court has had to consider the outline of the state action defense and although this may be thought inefficient in view of the possibility that we will be later called upon to decide the merits of that defense, this is not a substantial inconvenience when compared to the equities on the other side of the balance. We do not feel that there is significant risk that our taking jurisdiction in this case would bind us to take jurisdiction in any other case other than one in which the same issue is presented. Such cases will not to any appreciable extent increase the workload of this Court.[19]

In conclusion, the stay order of the district court is reversed. The case is remanded for further proceedings not inconsistent with this opinion.

### REVERSED AND REMANDED.

---

**19.** The appellee asserts that this Court has never before deemed the collateral order doctrine applicable to a stay of federal court proceedings pending reference to an administrative body. *See, e. g., Mercury Motor Express, Inc. v. Brinke,* 5 Cir. 1973, 475 F.2d 1086; *Ferrara v. Louisiana,* 5 Cir. 1971, 443 F.2d 344; *United Gas Pipeline Co. v. Tyler Gas Service Co.,* 5 Cir. 1957, 247 F.2d 681. It is true, as Bell suggests, that stays granted in these cases forced plaintiffs to undergo some delay in the prosecution of their rights in court and that delay alone was not enough to render the stays immediately appealable. The case before us now is distinguishable, however, because it involves more than delay. It involves totally unjustifiable delay. This fact also sufficiently distinguishes *Carter,* to the extent that case can be said to have implicitly rejected, by not discussing, a collateral order basis of appealability. We need not actually decide whether *Carter* rejected the collateral order basis of jurisdiction under the facts of that case.