492 F.Supp. 921 (1980)
ASSOCIATED TELEPHONE ANSWERING EXCHANGES, INC.
v.
AMERICAN TELEPHONE AND TELEGRAPH COMPANY
and
Bell Telephone Company of Pennsylvania.
No. 80-1820.
United States District Court, E. D. Pennsylvania, Civil Division.
June 24, 1980.
*922 Judith R. Cohn, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., Evan L. Gordon, Wofsey, Certilman, Haft & Lebrow, New York City, for plaintiff.
David H. Pittinsky, Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., for defendants.

MEMORANDUM
CLIFFORD SCOTT GREEN, District Judge.
In this antitrust action plaintiff Associated Telephone Answering Exchanges, Inc. (ATAE) has sued defendants American Telephone and Telegraph Company (AT&T) and Bell Telephone Company of Pennsylvania (Bell of Pa.) under Section 16 of the Clayton Act, 15 U.S.C. § 26. Plaintiff seeks both a preliminary and permanent injunction because allegedly certain planned conduct of defendants will violate Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2.[1] Now before the Court is defendants' motion to dismiss pursuant to Fed.R. Civ.P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. For the reasons discussed in this memorandum, at this time I will deny the motion to dismiss. Under the principles of the doctrine of primary jurisdiction, however, I will stay the proceedings in this matter pending a decision by the Pennsylvania Public Utility Commission (PUC) on the proposed tariff which is the cause of the present dispute.
The factual background of this case is as follows. Plaintiff is a trade association composed of telephone answering services located in each of the fifty states as well as in parts of Canada, the Virgin Islands and some foreign countries. Defendant AT&T is a corporation, which according to plaintiff, manufactures and distributes equipment used to furnish telephone services. Defendant Bell of Pa., a wholly-owned subsidiary corporation of AT&T, provides telephone service within the Commonwealth of Pennsylvania and is a regulated public utility under the jurisdiction of the Pennsylvania PUC.
The members of plaintiff provide telephone answering services to subscribers. In order to provide these services, the answering services companies must rent or buy equipment manufactured by subsidiaries of AT&T. In addition, they must rent the use of telephone lines of telephone companies such as defendant Bell of Pa. ATAE further alleges that in recent years defendant Bell of Pa. has continuously sought and obtained from the PUC rate increases for *923 the rental equipment and services it provides plaintiff answering services with the consequence that the profitability of the telephone answering service business has decreased.
At issue in this suit is a proposed tariff, filed with the PUC on May 8, 1980, for a new service known as Custom Calling Services II (CCSII) to be provided by Bell of Pa. CCSII would offer two new services to Bell of Pa. customers: (1) "advance calling", which allows the recording of a message of up to one minute for subsequent forwarding to a designated telephone number within the following twenty-four hours, either at a specified or a non-specified time and (2) "call answering", which provides for the automatic answering of up to two simultaneous calls to a telephone when the telephone is busy or not answering and permits a caller to leave a recorded message for later retrieval by a customer.[2]
ATAE asserts that permitting Bell of Pa. to offer the call answering service would result in violations of Sherman 1 and 2.[3] The gravamen of plaintiff's argument is that by entering into the telephone answering business defendants will be in direct competition with ATAE members and at the same time the defendants will enjoy an unfair advantage. Allegedly, Bell of Pa., and in the future other telephone companies controlled by AT&T,[4] because of their knowledge of ATAE members' clientele, their monopolistic position and the vast research and advertising resources of AT&T available to them, is offering and will be able to offer CCSII at an artificially low price. The consequence of all this, plaintiff argues, is that the unfair competitive tactics of defendants will drive ATAE answering services out of business.[5]
The relief sought by the complaint is an injunction prohibiting defendants from offering CCSII to customers of Bell of Pa. As an alternative form of relief, plaintiff requests the Court to fashion an injunction requiring the defendants to establish a separate subsidiary, which would not be allowed to capitalize on any of the resources of AT&T. In its memorandum in opposition to the motion to dismiss as well as in oral argument on the motion, plaintiff asked the Court to enter an injunction removing any telephone answering service engaged in by the defendants from the jurisdiction of the PUC or any other state regulatory agency.

DOCTRINE OF STATE ACTION IMMUNITY
Defendants premise their motion to dismiss on the theory that the CCSII tariff is subject to regulation by the PUC and thus is immune from an antitrust challenge under the state action doctrine first stated in Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1941). In the Parker case, the Supreme Court found that a State of California program designed to restrict competition among growers of raisins and maintain prices in the distribution of raisins to packers constituted state action immune from attack under the federal antitrust *924 laws. In a series of recent opinions,[6] the Supreme Court has sought to define the limits and the applicability of this doctrine. In the most recent of these opinions, California Retail Liquor Dealers Association v. Midcal Aluminum, Inc., 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), the Court observed that there are two standards which must be met before the doctrine of Parker v. Brown applies. The Court, quoting the City of Lafayette opinion, described the two part standard as follows:
First, the challenged restraint must be `one clearly articulated and affirmatively expressed as state policy'; second, the policy must be `actively supervised' by the State itself. 100 S.Ct. at 943.
Similarly, in the case of Mobilfone of Northeastern Pennsylvania, Inc. v. Commonwealth Telephone Co., 571 F.2d 141 (3 Cir. 1978), an opinion relied on heavily by the defendants as support for their motion to dismiss, the Third Circuit set forth a tripartite test for determining whether the defendant is protected by the Parker rule. According to Mobilfone, the defendant must show that 1) the state has an independent regulatory interest in the subject matter of the antitrust controversy; 2) there exists a clear and affirmative articulation of the state's policy regarding that interest; and 3) the state supervision is active. Id. at 144.
Pointing to the undisputed fact that Bell of Pa. is a public utility subject to the comprehensive system of rate regulation established by the Pennsylvania Public Utility Code, defendants assert that the CCSII tariff now challenged by plaintiff ATAE is immune from any antitrust attack under both of the standards described above. Defendants urge that provisions of the Public Utility Code clearly show that not only does the Commonwealth have an expressed interest in regulating the delivery of the services provided by Bell of Pa., but it actively supervises the delivery of such services.
Crucial to defendants' argument is the finding that CCSII, particularly the call answering service, is in fact a telephone service, which would be regulated by the PUC pursuant to the provisions of the Public Utility Code, rather than a "side business" as plaintiff argues. I believe, however, that the determination of whether the services known as CCSII are telephone services subject to regulation by the PUC is a factual finding which should be made initially by the Commission rather than by this Court.
The fact that the PUC has not yet considered or ruled on the CCSII tariff is an issue which arose during oral argument on the motion to dismiss. Continuing their reliance on the Mobilfone decision, defendants argued that the Court should simply dismiss the case and allow PUC to decide whether or not it would accept the proposed tariff. However, my interpretation of Mobilfone differs from that of the defendants. I believe that the fact that the Pennsylvania PUC had already considered and rejected the contentions raised by the antitrust suit was crucial to the Third Circuit's decision to affirm the dismissal of the case on a summary judgment motion. Since the PUC has not yet considered the CCSII tariff, this matter is clearly distinguishable from the Mobilfone case.

DOCTRINE OF PRIMARY JURISDICTION
Under the doctrine of primary consideration, a district court will refrain from deciding a case until the case has been considered and decided by the agency with concurrent jurisdiction. The Supreme Court, in Far East Conference v. United States, defined the primary jurisdiction doctrine as follows:
... a principle, now firmly established, that in cases raising issues of fact *925 not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure. 342 U.S. 570, 575, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952).
There are a number of underlying purposes for the doctrine;[7] however, in this case I am primarily concerned with the consideration described in the above quote. I believe that the threshold question presented by this case, that is, whether CCSII is a telephone service properly subject to PUC regulation, is technical in nature and thus should be decided initially by the PUC, with its "specialized competence". In addition, this Court will profit from the consideration by the PUC of the likely effects of the CCSII system on competition in the Pennsylvania telecommunications market.[8]
I am aware that the doctrine of primary jurisdiction has been applied primarily in cases involving a federal regulatory agency. Nonetheless, there are federal courts which have stayed proceedings in order to refer a case to a state regulatory agency. For example, in Industrial Communications Systems, Inc. v. Pacific Telephone and Telegraph Co., 505 F.2d 152 (9th Cir. 1974), a case involving a challenge to the tariffs of a telephone company by some radio signaling businesses, the Ninth Circuit, reversing a lower court's dismissal of an antitrust claim for failure to present a justiciable case, found that the district court, instead of dismissing, should have stayed the proceedings, pursuant to the doctrine of primary jurisdiction, until the California Public Utility Commission had an opportunity to consider and decide plaintiffs' claims.[9] I am confident, therefore, that the use of the doctrine of primary jurisdiction is appropriate in this case.
For the foregoing reasons, I am entering an order denying defendants' motion to dismiss and staying the proceedings in this case until the Pennsylvania PUC has decided whether to accept the proposed tariff for CCSII.
NOTES
[1] Appealing to this Court's power to exercise pendent jurisdiction over state claims, the complaint also alleges a cause of action for the common law tort of unfair competition.
[2] Another feature offered by CCSII is something called remote access. The proposed tariff filed with the PUC describes this service as enabling "a customer to access Call Answering Service ... and Advance Calling from any TOUCH-TONE equipped telephone or an equivalent type of signaling device ... from a distant location anywhere in the United States, including Alaska and Hawaii." (Exhibit A to defendants' motion to dismiss).
[3] Plaintiff has stated that it does not challenge the right of Bell of Pa. to offer the advance calling service to its customers. (Notes of Testimony, 6/9/80, at 45).
[4] It is plaintiff's belief that AT&T, through its other subsidiary telephone companies, plans to offer CCSII on a nation-wide basis.
[5] Plaintiff is particularly concerned that the CCSII will lure away the "low-end" subscribers of ATAE members. Apparently, the low-end subscriber is one who subscribes to a telephone answering service on a long-term basis but uses the service only periodically. Plaintiff claims that low-end subscribers make up approximately 25% of any individual answering service's clientele, but they account for the most profitable aspect of the business.
[6] See, e. g., California Retail Liquor Dealers Association v. Midcal Aluminum, Inc., 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980); City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978); Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); Cantor v. Detroit Edison Co., 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976) and Goldfarb v. Virginia State Bar, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975).
[7] For a discussion of the rationale underlying the primary jurisdiction doctrine, see Botein, Primary Jurisdiction: The Need for Better Court/Agency Interaction, 29 Rutgers L.Rev. 867 (1975).
[8] In the Mobilfone case, Judge Aldisert noted that the PUC considers the competition factor as well as the need for the service and the fitness of the applicant. 571 F.2d at 147.
[9] See also Litton Systems, Inc. v. Southwestern Bell Telephone Co., 539 F.2d 418, 421 (5th Cir. 1976).