In re NISSAN MOTOR CORPORATION ANTITRUST LITIGATION.

Richard E. HITT, on behalf of himself and all others similarly situated, et al., Plaintiffs-Appellants,

v.

NISSAN MOTOR COMPANY, LTD., et al., Defendants-Appellees.

No. 76–1375.

United States Court of Appeals, Fifth Circuit.

May 25, 1977.

---

Donald E. Scott, Chicago, Ill., Hammond E. Chaffetz, John P. Lynch, Reuben L. Hedlund, Chicago, Ill., John R. Hoehl, Miami, Fla., for defendants-appellees.

Granvil I. Specks, Chicago, Ill., Eugene Portman, St. Louis, Mo., Richard M. Kranzler, Denver, Colo., Joseph L. Alioto, Ralph Golub, San Francisco, Cal., Jerome S. Wald, Chicago, Ill., Norris L. O'Neill, Hartford, Conn., Morton S. Bunis, Newark, N. J., Zenon F. Myszkowski, Albuquerque, New Mexico, Bruce C. Waltzer, New Orleans, La., Henry H. Feikema, Minneapolis, Minn., for plaintiffs-appellants.

Before COLEMAN, CLARK and TJOFLAT, Circuit Judges.

CLARK, Circuit Judge:

Plaintiffs represent the original retail purchasers of approximately 371,000 new Datsun motor vehicles from franchised Datsun dealers during the period 1966 through February 26, 1973, in the following states: California, Colorado, Connecticut, Illinois, Louisiana, Minnesota, Missouri, New Jersey, New Mexico, and Texas. As class representatives, they commenced their separate actions against the following defendants: every Datsun dealer (dealer defendants) located in each state, Nissan Motor Corporation in U.S.A. (Nissan U.S.A.), and its Japanese parent, Nissan Motor Company, Ltd. (Nissan Japan), alleging that defendants had combined and conspired to fix, maintain, or stabilize the retail prices at which new Datsun motor vehicles are sold in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (1970).[1] Plaintiffs appeal from two interlocutory orders of the district court: (1) A "class notice" order that requires Nissan U.S.A. to prepare and submit at its own expense a computer printout of the names and addresses of current, regis-

---

1. Antitrust class actions on behalf of 26 statewide classes and 2 county-wide classes of original retail purchasers of new Datsun motor vehicles are presently pending before the district court, the statewide class actions having been transferred for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407 (1970), *see In re Nissan Motor Corp. Antitrust Litigation*, 352 F.Supp. 960 (Jud.Pan.Mult.Lit.1973), and the county-wide class actions having been certified prior to transfer of the subject 10 classes. *P.D.Q. Inc. of Miami v. Nissan Motor Corp. in U.S.A.*, 61 F.R.D. 372 (S.D.Fla.1973).

tered Datsun owners and that directs plaintiffs at their expense to mail an initial class notice to those persons in the computer printout and to próvide for notice by publication for those class members who cannot be identified individually. (2) A "separate notice" order that refused to permit information concerning plaintiffs' proposed, partial settlement with the dealer defendants to be included in the initial class notice and directed plaintiffs to mail separate notice of the partial settlement to those class members who had not excluded themselves from the case after the expiration of 3 weeks from the date of mailing the initial class notice. We hold: (1) Appellate jurisdiction exists to review both orders. (2) Plaintiffs must extract, at their own expense, the names and last known addresses of the absentee class members from defendants' business records and mail notice of the action to each absentee class member. (3) The district court must devise an initial class notice that contains, in addition to that information set forth in rule 23(c)(2), objective, neutral information of plaintiffs' proposed partial settlement with the dealer defendants.

After the 10 statewide actions were transferred to the United States District Court for the Southern District of Florida for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 (1970),[2] the transferee district court certified statewide classes in each under Federal Rule Civil Procedure 23(b)(3). The district court then held a preliminary hearing to review plaintiffs' proposed settlement that released the California dealer defendants from all claims in exchange for a payment of $1,500 from each dealer defendant. During this hearing, the district court was advised that similar settlement offers had been made to nearly every dealer defendant in the other nine statewide actions and that the responses received as of that date were affirmative. Contingent upon the district court's preliminary approval of the proposed settlements, plaintiffs also submitted to the court a "combination notice" designed to inform absentee class members of the 10 classes of the district court's 23(b)(3) class certification and of the partial settlement to avoid the double expense to the class of sending out two notices.

Upon considering Nissan defendants' objections to plaintiffs' combination notice and the proposed settlements, the district court ruled that the initial class notice should not refer to the proposed, partial settlements but that after the expiration of 3 weeks from the date of mailing such notice, notice of the settlement was to be mailed to class members who had not opted out pursuant to the initial class notice.[3] Later, the district court conditionally approved the proposed settlements with the California dealer defendants. Substantially identical settlements with dealer defendants in the Colorado, Illinois, Louisiana, Minnesota, Missouri, New Jersey, and Texas actions were also subsequently preliminarily approved. The proceeds of these settlements, aggregating $315,000, are presently on deposit in trust accounts.[4]

---

2. Nine of the 10 instant actions were initially transferred to the district court, *see In re Nissan Motor Corp. Antitrust Litigation*, 385 F.Supp. 1253 (Jud.Pan.Mult.Lit.1974), and the tenth action was subsequently transferred for similar pretrial proceedings. Record, Vol. 1, at 1, 4.

3. After plaintiffs' motion for reconsideration of the order was denied, plaintiffs requested that the district court certify this "separate notice" issue under 28 U.S.C. § 1292(b) (1970), but by order entered November 26, 1975, the district court refused. Plaintiffs did not file a notice of appeal in the instant action until January 27, 1976. *See* text at note 9 *infra*.

4. By the express terms of the settlement orders, these settlement funds

> shall be used . . . to pay all costs of notice to the class and all out-of-pocket expenses incurred in connection with the administration of the proposed settlement * * [and] the balance of the settlement fund . . . shall be used solely to pay any and all out-of-pocket expenses incurred in connection with the prosecution of the . . . action against the remaining defendants. All such disbursements from the balance of the settlement fund shall be made only with prior consent and approval by order of the court.

Record, Vol. 1, at 202, 203–04.

**1094**

After entry of the district court's "separate notice" order, plaintiffs moved that Nissan U.S.A. be ordered to supply a list of the names and addresses of the class members in the 10 states. This was to be compiled from Nissan U.S.A.'s Retail Delivery Report cards (RDR cards) received from its dealer defendants throughout the country. At a pretrial conference, plaintiffs advised the court that they would not search defendants' RDR cards nor would they bear the cost of Nissan U.S.A.'s search of the cards. Plaintiffs argued that rule 23(c)(2)'s "reasonable effort" due process requirement was a "two-way street" and that since the RDR cards were in the possession of Nissan U.S.A., it was obligated to conduct and bear the costs of the search. The district court was informed that Nissan U.S.A. had two sets of records relevant to plaintiffs' motion: the RDR cards and a current computer listing, compiled since 1971. The RDR cards, which number 1,700,000, record sales of new Datsun motor vehicles during 1966–1975, list a vehicle serial number and the name and address of each purchaser, and are indexed by Model type rather than by selling dealer or by state. The computer listing contains the names and addresses of current owners of Datsun motor vehicles and is updated when purchasers of used Datsuns inform Nissan U.S.A. of the change in ownership and when Nissan U.S.A. integrates state vehicle registration lists purchased from an independent data gathering company with their computer listing.

The district court ordered defendants, at their own expense, to prepare and submit a computer printout listing the names and addresses of current registered Datsun owners. Plaintiffs were ordered to mail individual notice of the action to those persons whose names appeared in the computer printout, to give notice by publication in 12 states to unidentified class members,[5] and to bear the costs of both types of notice.

Plaintiffs subsequently filed a timely appeal from this order.

*I. Appellate Jurisdiction*

28 U.S.C. § 1291 (1970) vests this court with "jurisdiction of appeals from all final decisions of the district courts of the United States . . . ." While statutory exceptions to section 1291 exist, none of these exceptions apply here.[6] Implicit in entertaining any interlocutory order is the hazard that piecemeal appeals will burden the efficacious administration of justice and unnecessarily protract litigation, thus inconveniencing the parties with the costs and delay of separate appeals. In *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949), however, the United States Supreme Court defined the "collateral order" doctrine as an exception to section 1291's requirement of finality. This doctrine embraces "that small class [of interlocutory orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 169–72, 94 S.Ct. 2140, 2148–50, 40 L.Ed.2d 732 (1974); *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152–54, 85 S.Ct. 308, 311–12, 13 L.Ed.2d 199 (1964).

We recently noted, in *Litton Systems, Inc. v. Southwestern Bell Telephone Co.*, 539 F.2d 418, 425 (5th Cir. 1976), that for an interlocutory order to fall within the *Cohen* exception to finality "(1) the substance of collateral orders must be independent and easily separable from the substance of other claims, (2) at least part of the question of collateralness is determined by the need to secure prompt review in

---

5. Notice by publication in 12 states was thought to be necessary because absentee class members in certain states might predominately rely upon out-of-state newspapers as their principal source of information.

6. Plaintiffs did not request that the district court certify this "class notice" issue under 28 U.S.C. § 1292(b) (1970). *See also id.* § 1292(a); Fed.R.Civ.Pro. 54(b).

order to protect important interests of any party, and (3) the finality issue is to be examined in light of practical, rather than narrowly technical, considerations." *Quoting Diaz v. Southern Drilling Co.*, 427 F.2d 1118, 1123 (5th Cir.), *cert. denied*, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970). We apply this test to the case at bar.

First, the class notice order is "separable from, and collateral to," the substantive claims at the marrow of this action. Ascertaining the propriety of the order will not require examining either the merits of plaintiffs' asserted antitrust claims or any possible defenses of the defendants. *Eisen v. Carlisle & Jacquelin*, 417 U.S. at 171–72, 94 S.Ct. at 2149–50; *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. at 546–47, 69 S.Ct. at 1225–26; *Litton Systems, Inc. v. Southwestern Bell Telephone Co.*, 539 F.2d at 426; *Diaz v. Southern Drilling Co.*, 427 F.2d at 1123. Furthermore, the order is not "tentative, informal or incomplete," *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. at 546, 69 S.Ct. at 1225, and was entered only after the district court "conclusively rejected"[7] plaintiffs' arguments that rule 23(c)(2)'s reasonable effort standard required defendants to supply a list of class members from its RDR cards. Resolution of the order's validity "in an immediate appeal does not substantially threaten the interests of the judicial system in avoiding piecemeal appeals." *Litton Systems, Inc. v. Southwestern Bell Telephone Co.*, 539 F.2d at 426.

Second, appellate review is necessary to prevent irreparable harm to important interests of part of the class. The class notice order, as presently framed, probably omits substantial numbers of the certified class of original retail purchasers of Datsun motor vehicles whose names will not be included in Nissan U.S.A.'s computer printout of current registered Datsun owners because they have transferred the ownership of vehicles they purchased. Should a final judgment be entered which required reversal on these procedural issues, the settlement fund might be so seriously depleted that plaintiffs could not afford the costs of a second round of notices. Thus, the lawsuit could be thwarted effectively. Moreover, the order makes no provisions to safeguard the substantive due process rights of this group should any of its members discover that the present action is pending or has gone to trial after the 3-week opt out period provided for in the "separate notice" order expires.[8] The order will unnecessarily drain the settlement fund since it requires plaintiffs, as class representatives, to mail individual notice to persons who are not members of the certified class, thus reducing the pro rata amount which claimants to the fund might ultimately be entitled. The class notice order also presents "serious and unsettled question(s)" of law—both as to whether it satisfies the reasonable effort due process standard set forth in rule 23(c)(2) and as to which party should bear the task and costs of gathering information necessary to ensure adequate class notice—that this court has not previously addressed and are particularly appropriate for resolution as a collateral order. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. at 547, 69 S.Ct. at 1226.

Third, when the class notice order is viewed with a "practical, rather than narrowly technical" focus, appellate review is manifestly appropriate under the same considerations discussed above. A danger exists that class members who are not included in the computer printout of current registered owners and who will not receive notice by publication, will be denied timely justice if jurisdiction is refused. *Gillespie*

---

7. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 172, 94 S.Ct. 2140, 2150, 40 L.Ed.2d 732 (1976).

8. Under rule 23(c)(2) or (d)(2), the district court could have entered an order providing this class of persons with the opportunity to appear and opt out, thus excluding them from the class, even after the original 3-week period had run, *Berland v. Mack*, 48 F.R.D. 121, 130 (S.D.

N.D.1969), or the district court could have entered an order protecting this class of persons from any possible subsequent defaults because of a failure to respond to later prescribed deadlines, for example, to file a proof of claim to the preliminary settlement by a stipulated date. *Zients v. La Morte*, 459 F.2d 628 (2d Cir. 1972).

*v. United States Steel Corp.*, 379 U.S. at 153, 85 S.Ct. at 311; *Litton Systems, Inc. v. Southwestern Bell Telephone Co.*, 539 F.2d at 426–27; *Fox v. City of West Palm Beach*, 383 F.2d 189, 193–94 (5th Cir. 1967). The orders held up for review on appeal operate to require the mailing of individual notice to nonclass members and notice by publication in 12 states. Resolution of the class notice issue could ultimately reduce the amount of time and money expended in this litigation. *Gillespie v. United States Steel Corp.*, 379 U.S. at 153, 85 S.Ct. 311; *Litton Systems, Inc. v. Southwestern Bell Telephone Co.*, 539 F.2d at 427. Accordingly, we hold that this order falls within the *Cohen* exception to 28 U.S.C. § 1291's finality requirement.

■ Finally, we reject defendants' contention that even if this court may properly review the "class notice" order, jurisdiction does not properly lie to review the content of the order, *i. e.,* the propriety of the "separate notice" order, because plaintiffs failed to file a timely notice of appeal as to it.[9] Since the two orders directly relate to the scope of the absentee class members' rights under rule 23 and to the costs of class notice to be expended in the instant action, thus affecting the pro rata share of each class member's claim to the provisional settlement fund, they are sufficiently closely related to justify the review of both. *Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 352 (7th Cir. 1975); *Fox v. City of West Palm Beach*, 383 F.2d at 194; *see Myers v. Gilman Paper Corp.*, 544 F.2d 837, 847 (5th Cir. 1977); *cf. Monarch Asphalt Sales Co. v. Wilshire Oil Co. of Texas,* 511 F.2d 1073, 1077 (10th Cir. 1975).

## II. Federal Rule Civil Procedure 23

■ At the outset we note that our review of the class action issues raised in this appeal is limited to whether the district court abused its discretion when entering its two orders. *E. g., Clark v. Universal*

*Builders, Inc.,* 501 F.2d 324, 340 (7th Cir.), *cert. denied,* 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974); *Supermarkets General Corp. v. Grinnell Corp.,* 490 F.2d 1183, 1186 (2d Cir. 1974); *Gold Strike Stamp Co. v. Christensen,* 436 F.2d 791, 798–99 (10th Cir. 1971); *see Robinson v. Union Carbide Corp.,* 544 F.2d 1258 (5th Cir. 1977), *modifying in part* 538 F.2d 652 (1976); *Miller v. Mackey Int'l, Inc.,* 452 F.2d 424 (5th Cir. 1971). In the management of class actions, Federal Rule Civil Procedure 23 necessarily vests the district courts with a broad discretion to enable efficacious administration of the course of the proceedings before it. *See* Tentative Draft, *Manual for Complex Litigation* (fourth revision July 21, 1976). Although broad, the district court's authority is not without limits. Appellate review is necessary to assure that the rights of absentee class members are not inundated in the wake of a district court's brisk supervision.

### A. The "Reasonable Effort" Requirement of Rule 23(c)(2)

The district court characterized the examination of the 1,700,000 RDR cards to extract the class members' names and addresses as an "herculean task" and an "unnecessarily time consuming and burdensome process." It found that

[i]t is unreasonable to expect the defendants to supply the updated addresses of all purchasers of Datsun motor vehicles even though some addresses may be as old as 1966 since individual notice sent to the time of purchase addresses of Datsun purchasers appears "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Despite the fact that no correlation was shown to exist between the class of original

---

9. The district court's final action taken in relation to its "separate notice" order was on November 26, 1975. Note 3 *supra.* Plaintiffs filed a notice of appeal on January 27, 1976, thereby exceeding the 30-day jurisdictional requirement provided by Fed.R.App.Pro. 4(a). *See Gann v. Smith,* 443 F.2d 352 (5th Cir. 1971).

retail Datsun purchasers and the class of current, registered Datsun owners, the district court found that mailing individual notice to current, registered owners and providing for notice by publication to unidentified class members would satisfy subdivision (c)(2) and applicable due process standards.

Rule 23(c)(2) prescribes the type of notice to be used in 23(b)(3) actions. It provides in part that "the court shall direct to the members of the class the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." The United States Supreme Court has declared that subdivision (c)(2) expresses an "unambiguous requirement" that "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin,* 417 U.S. at 175–76, 94 S.Ct. at 2150–51.[10] Further, because constructive notice has "long been recognized as a poor substitute for actual notice and its justification [is] ' "difficult at best." ' " *Id.* at 175, 94 S.Ct. at 2150, *quoting Schroeder v. City of New York,* 371 U.S. 208, 213, 83 S.Ct. 279, 283, 9 L.Ed.2d 255 (1962), it is to be used only when circumstances make it impracticable to gain the names and addresses of class members and notify them individually of the action's pendency. *Cf. Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). This approach, which comports with due process standards and facilitates the class actions' res judicata effect, *see Eisen v. Carlisle & Jacquelin,* 417 U.S. at 173–77, 94 S.Ct. at 2150–52; *Advisory Committee Note,* 39 F.R.D. 98, 105, 107 (1966), demands that absentee class members be provided with the "maximum opportunity for notice." *Greenfield v. Villager Indus., Inc.,*

483 F.2d 824, 829–31 (3d Cir. 1973); *followed, Girsh v. Jepson,* 521 F.2d 153, 158–59 (3d Cir. 1975).

No single formula can be derived which will anticipate the myriad circumstances that may confront class action litigants attempting to identify absentee class members of a 23(b)(3) action and resolve whether the effort required is reasonable. Nonetheless, three decisions of the United States Supreme Court provide ample guidance to resolve the case before us today. In *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), a trustee's action for judicial settlement of common trust fund accounts, the constitutional sufficiency of notice by publication to the trusts' beneficiaries was at issue. The Supreme Court rejected the trustee's contention that constructive notice was adequate as to those beneficiaries whose names and addresses were known to the trustee. "Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and post office addresses of those affected by a proceeding are at hand the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." *Id.* at 318, 70 S.Ct. at 659.

Twelve years later, the court reaffirmed this principle: "The general rule that emerges from the *Mullane* case is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." *Schroeder v. City of New York,* 371 U.S. at 212–13, 83 S.Ct. at 282. Both *Mullane* and *Schroeder* serve to underpin the Supreme

---

10. The history of the protracted *Eisen* litigation is complex. Several of the opinions are relevant to our discussion today. The reported litigation is listed below. Subsequent citations to one or more of the several *Eisen* opinions appear without the accompanying case history. *Eisen v. Carlisle & Jacquelin,* 41 F.R.D. 147 (S.D.N.Y.), *appeal allowed,* 370 F.2d 119 (2d Cir. 1966) *(Eisen I), cert. denied,* 386 U.S. 1035,

87 S.Ct. 1487, 18 L.Ed.2d 598 (1967), *rev'd and remanded while retaining jurisdiction,* 391 F.2d 555 (1968) *(Eisen II), on remand* 50 F.R.D. 471, 52 F.R.D. 253 (1971), 54 F.R.D. 565 (1972), *rev'd,* 479 F.2d 1005 (1973) (Eisen III), *vacated and remanded,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) *(Eisen v. Carlisle & Jacquelin).*

Court's holding in *Eisen v. Carlisle & Jacquelin,* 417 U.S. at 173–77, 94 S.Ct. at 2150–52, that subdivision (c)(2) obligates the courts to order the class representatives of a 23(b)(3) action to mail individual notice to the last known address of those class members who can be identified with reasonable effort. Although the court did not define what constitutes a reasonable effort for subdivision (c)(2)'s purpose, its affirmance of the district court's reasonable effort findings is instructive.

After the remand from *Eisen II,* 391 F.2d 555, 568–70 (1968), the district court, in accordance with the instructions of the United States Court of Appeals for the Second Circuit, held an evidentiary hearing to determine, among other things, how many class members could be identified with reasonable effort. Eisen represented himself and over 6,000,000 other buyers and sellers who had traded in odd-lots (lots of securities fewer than 100) on the New York Stock Exchange during the period from May 1, 1962, through June 30, 1966. Based upon the parties' access to computer listings, the district court found that the names and addresses of 2,250,000 class members could be identified with reasonable effort. 52 F.R.D. 253, 257–58 (1971).

In *Eisen v. Carlisle & Jacquelin,* after having meticulously described the history of the *Eisen* litigation, including the district court's subdivision (c)(2) evidentiary hearing and its "reasonable effort" findings, 417 U.S. at 165–68, 94 S.Ct. at 2147–48, the Supreme Court noted that "the names and addresses of 2,250,000 class members are *easily ascertainable,* and there is nothing to show that individual notice cannot be mailed to each." *Id.* at 175, 94 S.Ct. at 2151. (Emphasis supplied.) Eisen's argument that the sending of individual notice to class members should be waived in his case because the prohibitive costs of notice would abort the action and frustrate the policies underlying his antitrust and securities claims, was rejected by the court with this comment: "There is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs." *Id.* at 176, 94 S.Ct. at 2152.

 Taken together these cases establish the principle that the type of notice to which a member of a class is entitled depends upon the information available to the parties about that person. Consistent with this general principle, subdivision (c)(2)'s reasonable effort standard requires that, once a 23(b)(3) action has been certified, the name and last known address of each class member known to the parties or capable of being identified from business or public records available to them must be produced.[11] The source or sources provid-

11. *Gold v. Ernst & Ernst (In re Franklin Nat'l Bank Sec. Litigation),* 73 F.R.D. 25, 29 (E.D.N. Y.1976) ("[Defendant] shall take such steps as may be necessary to obtain lists of the names and last known addresses of the class members defined herein . . .. [A]ny persons who may have books or records containing the names and addresses of the class members or their nominees shall cooperate with [defendant] and make available . . . any and all such lists or other material for inspection and copying."); *Freedman v. Amalgamated Sugar Co. (In re Sugar Industry Antitrust Litigation),* 73 F.R.D. 322, 359–60 (E.D.Pa.1976) (Plaintiffs required to examine trade association membership and marketing lists and defendants' sales records to compile absentee class members' names and addresses. Notice by publication reserved for those class members who cannot be identified.); *Herbst v. International Tel. & Tel. Corp.,* 65 F.R.D. 13, 19 (D.Conn.1973), *certification of class aff'd,* 495 F.2d 1308 (2d Cir. 1974), *proposed settlement disapproved,* 72

F.R.D. 85 (1976). (Names and addresses of class members available from defendant's computer tapes required.); *In re Antibiotic Antitrust Actions,* 333 F.Supp. 278, 290–91 (S.D.N. Y.), *aff'd per curiam, Pfizer, Inc. v. Lord,* 449 F.2d 119 (2d Cir. 1971) (" '[B]est notice practicable' is a direct mailing of the notice . . . to all addresses within the state which are on mailing lists in the possession of the state or its agencies or available from other sources."); *Berland v. Mack,* 48 F.R.D. 121, 129–30 (S.D.N. Y.1969) (Individual notice to class members whose names and addresses are available from records of defendants' transfer agent. Brokers who registered and held stock for class members in "street names" ordered to provide defendants with those class members' names and addresses. Notice by publication reserved for those class members who remain unidentified.); *Herbst v. Able,* 47 F.R.D. 11, 17–18 (S.D. N.Y.1969), *modified on other grounds,* 49 F.R.D. 286 (1971) (Plaintiffs ordered to mail individual notice to class members whose

ing the greatest number of names and addresses must be used. Obviously, the word "reasonable" cannot be ignored. In every case, reasonableness is a function of anticipated results, costs, and amount involved. A burdensome search through records that may prove not to contain any of the information sought clearly should not be required. On the other hand, a search, even though calculated to reveal partial information or identification, may be omitted only if its cost will exceed the anticipated benefits.[12] Here, we know that the RDR cards provide the court with the best available listing of the names and addresses of all class members. Indeed, the parties agree on this. They only shy from undertaking the effort. While the search cannot be made with push-button ease, its advantages bring the effort required within the range of reasonableness.

■ The class notice order is defective in two aspects. Current, registered Datsun owners is an overinclusive group. While it includes any original retail Datsun purchasers of the class who have continued to keep their vehicle, it also includes *the present owner of every Datsun acquired in the United States since February 27, 1973.* Since no evidence was produced to show what percent of the names and addresses of class members might appear on the proposed computer printout list, it is impossible to estimate how many absentees class members would receive individual notice. It seems likely that mailing notice to every person listed in any California metropolitan telephone book could notify as many class members.

A more fundamental defect, however, is that the class notice is underinclusive. Even though their names and addresses are on RDR cards, class members who no longer own the vehicles they purchased will not receive individual notice. These persons will be notified constructively by newspaper publication. "Chance alone brings to the

names and addresses are identifiable from defendants' records.); *Harris v. Jones,* 41 F.R.D. 70, 74 n.8 (D.Utah 1966) ("[T]he names and last known addresses [of the entire class of 1500 certificate holders] are on file and thus readily available."); *see Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 (7th Cir. 1974) (Notice to 2,500 class members presents "little difficulty since consumers are identifiable from the company's installment sales contracts."); *Appleton Elec. Co. v. Advance-United Expressways,* 494 F.2d 126, 137–39 (7th Cir. 1974) (Three categories of defendant interstate carriers required to compile the most complete list of names and addresses of class members as was available from their files.); *West Virginia v. Chas. Pfizer & Co.,* 314 F.Supp. 710, 724–25 (S.D.N.Y.1970), *aff'd,* 440 F.2d 1079, 1083, 1090–91 (2d Cir.), *cert. denied sub nom., Cotler Drugs, Inc. v. Chas. Pfizer & Co.,* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971) (Individual notice to every member of class of state government entities and institutions and class of drug wholesalers-retailers and notice by publication in every daily newspaper of the participating states to consumer class members approved.); *Chevalier v. Baird Sav. Ass'n,* 72 F.R.D. 140, 147–48 (E.D.Pa.1976) (Names and addresses of 50,000 class members identifiable from defendants' records.); *Richardson v. Hamilton Int'l Corp.,* 62 F.R.D. 413, 423 (E.D.Pa.1974) (Class members' names and addresses identifiable from defendants' records.); *Lamb*

*v. United Sec. Life Co.,* 59 F.R.D. 25, 43 (S.D. Iowa 1972) (Defendants required to prepare a list of former shareholders from stock transfer lists and other documents in their possession and to obtain additional names of beneficial owners from brokerage firm nominees.); *Cohen v. Franchard Corp. (In re Cohen's Will),* 51 F.R.D. 167, 175 (S.D.N.Y.1970), *aff'd on other grounds,* 478 F.2d 115 (2d Cir. 1973) (Notice must be given by plaintiffs to members of the class as shown on defendants' books and records.); *Contract Buyers League v. F & F Investment,* 48 F.R.D. 7, 15 (N.D.Ill.1969) (Defendants must furnish a list of persons known by them to be members of plaintiffs' class.); *cf. Societe Generale De Banque v. Touche Ross & Co. (In re United States Financial Sec. Litigation),* 69 F.R.D. 24, 46–47 (S.D.Cal.1975) (Class representatives required to exert reasonable effort to identify every debenture holder and provide individual notice to class members.); *Korn v. Franchard Corp.,* 50 F.R.D. 57 (S.D. N.Y.1970) (Production of names and addresses of entire class of 1,000 persons identifiable from ledgers in the possession of defendants required.) *See generally In re National Student Marketing Litigation v. Barnes Plaintiffs,* 530 F.2d 1012 (D.C.Cir. 1976) (semble). *See also B & B Investment Club v. Kleinert's Inc.,* 62 F.R.D. 140, 145–46 (E.D.Pa.1974).

**12.** *See Berland v. Mack,* 48 F.R.D. 121, 129–30 (S.D.N.Y.1969).

attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. at 315, 70 S.Ct. at 658.

That the absentee class members' opportunity to receive their subdivision (c)(2) notice be reduced to mere chance need not arise here. When the chore of examining defendants' RDR cards is juxtaposed to the efforts required to identify the individual *Eisen* class members, it pales by comparison. The district court's characterization of the undertaking here as "herculean" is accurate only in relation to the class's size. The key, though, is reasonable effort, and a large class requires a large effort. Subdivision (c)(2) mandates that each class member be given the "best notice practicable under the circumstances." While the mechanical process of examining the cards may prove to be expensive and time-consuming, the individual right of absentee class members to due process makes the cost and effort reasonable. Accordingly, the district court's class notice order is vacated, and the court is directed to require individual notice to the class based on the information available on the RDR cards.

### B. Compliance with the "Reasonable Effort" Standard

Nissan U.S.A. made its noncomputerized dealer sales records, including the RDR cards, available to plaintiffs for inspection and copying. In response to plaintiffs' motion for an order requiring Nissan U.S.A. to search the RDR cards and develop a complete list of class members, the district court ordered the defendants to prepare a computer printout of current, registered Datsun owners.

On appeal plaintiffs argue that defendants should be required at their own expense to supply the names and addresses of the class members citing several decisions in which similar orders have been made.[13] They contend somewhat obliquely that this requirement is necessary to comply with due process standards and is wholly consistent with the Supreme Court's determination in *Eisen v. Carlisle & Jacquelin,* 417 U.S. at 177, 94 S.Ct. at 2151, that the names and addresses of Eisen's 2,250,000 class members were "easily ascertainable." Finally, they assert that since defendants are "intimately familiar" with the information contained in the RDR cards, having used them in their daily operations, the class information is more readily ascertainable by defendants.

Plaintiff's suggestion that procedural due process requires that defendants at their expense furnish plaintiffs with a list of the absentee class members' names and addresses borders on the frivolous. We reject this argument. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). *Eisen v. Carlisle & Jacquelin,* 417 U.S. at 177–79, 94 S.Ct. at 2152–53, suggests the appropriate method of resolving this issue. Upon the remand of *Eisen II* from the Second Circuit, the district court found that Eisen's large class was identifiable through reasonable effort. 52 F.R.D. 253, 257–58 (1971). After conducting a preliminary hearing on the merits of Eisen's anti-trust and securities claims, the district court found that Eisen was "more than likely" to prevail and ordered that 90 percent of the costs of notifying absentee class members be imposed upon the defendants. 54 F.R.D. 565, 567 (1972). In affirming the Second Circuit's reversal of this portion of the district court's order, the Supreme Court found that "nothing in either the language or history of Rule 23 . . . gives a court any

---

**13.** *Chevalier v. Baird Sav. Ass'n,* 72 F.R.D. 140 (E.D.Pa.1976); *City of New York v. Darling-Delaware, Inc.,* 1976–1 Trade Reg.Rep. (CCH) ¶ 60,182 (S.D.N.Y.1976); *Hawkins v. Holiday Inns, Inc.,* 1975–1 Trade Reg.Rep. (CCH) ¶ 60,-153 (W.D.Tenn.1975); *Richardson v. Hamilton*

*Int'l Corp.,* 62 F.R.D. 413 (E.D.Pa.1974); *Foster v. Maryland State Sav. & Loan Ass'n,* 1974–2 Trade Reg.Rep. (CCH) ¶ 75,277 (D.D.C.1974); *Contract Buyers League v. F & F Investment,* 48 F.R.D. 7 (N.D.Ill.1969).

authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." 417 U.S. at 177, 94 S.Ct. at 2152. As to the propriety of imposing a portion of the costs of notice upon the *Eisen* defendants, the Court found that under rule 23, no support whatsoever existed for entering such an order. "The usual rule is that a plaintiff must initially bear the cost of notice to the class. . . . Where, as here, the relationship between the parties is truly adversary, the plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit." *Id.* at 178–79, 94 S.Ct. at 2153.

Rule 23 is also silent as to which party must be saddled with the time and expense of gathering the names and addresses of absentee class members. Nor does the *Ad-*

*visory Committee's Note to Rule 23,* 39 F.R.D. 98 (1966), discuss this matter.[14] Examination of the decisions treating this question reveals that contrary to plaintiffs' suggestion, both plaintiffs and defendants have been ordered to compile information necessary to the identification of absentee class members.[15] Although the district courts' reasons for doing so have not always been articulated, whether one party or the other has been designated appears to have turned on which would have the easier task in gathering the information sought.

All but one of the cases cited by plaintiffs are consistent with this "rule of reason" approach:[16] In *Chevalier v. Baird Sav. Ass'n,* 72 F.R.D. 140 (E.D.Pa.1976), a combined federal antitrust and Truth-in-Lending action brought by single-dwelling mortgagors against 22 savings and loan associa-

**14.** This is not too surprising since the draftsmen were principally concerned with clarifying those instances in which the three different types of class actions might be properly maintained while enhancing each action's res judicata effect consistent with standards of due process. *Advisory Committee's Note to Rule 23,* 39 F.R.D. 98, 98–99 (1966). *See generally* Frankel, *Some preliminary Observations Concerning Civil Rule 23,* 43 F.R.D. 39, 43–45 (1967); Developments in the Law—Class Actions, 89 Harv.L.Rev. 1318, 1321–29 (1976). "[E]conomies of time, effort and expense" in consolidating common claims and obtaining a "uniformity of decision as to persons similarly situated" with the resultant convenience to both the parties and the federal courts appear to have been equally important, *Advisory Committee's Note to Rule 23,* 39 F.R.D. 98, 102–04 (1966), especially in the context of the 23(b)(3) action where the court must find, among other things, that "questions of law or fact common to the . . . class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.Pro. 23(b)(3).

**15.** *Compare Freedman v. Amalgamated Sugar Co.* (*In re Sugar Industry Antitrust Litigation*), 73 F.R.D. 322, 359–60 (E.D.Pa.1976), *Societe Generale De Banque v. Touche Ross & Co.* (*In re United States Financial Sec. Litigation*), 69 F.R.D. 24, 46–47 (S.D.Cal.1975), *and In re Antibiotic Antitrust Actions,* 333 F.Supp. 278, 290–91 (S.D.N.Y.), *aff'd per curiam, Pfizer, Inc. v. Lord,* 449 F.2d 119 (2d Cir. 1971) (plaintiffs), *with Gold v. Ernst & Ernst* (*In re Franklin Nat'l*

*Bank Sec. Litigation*), 73 F.R.D. 25, 29 (E.D.N.Y.1976), *and Herbst v. International Tel. & Tel. Corp.,* 65 F.R.D. 13, 19 (D.Conn.1973), *certification of class aff'd,* 495 F.2d 1308 (2d Cir. 1974), *proposed settlement disapproved,* 72 F.R.D. 85 (1976) (defendants). In some instances both parties have participated in furnishing the names and addresses of absentee class members. *E. g., West Virginia v. Chas. Pfizer & Co.,* 314 F.Supp. 710, 724–25 (S.D.N.Y.1970), *aff'd,* 440 F.2d 1079, 1083, 1090–91 (2d Cir.), *cert. denied sub nom., Cotler Drugs, Inc. v. Chas. Pfizer & Co.,* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971).

**16.** See cases cited note 15 *supra. Foster v. Maryland State Sav. & Loan Ass'n,* 1974–2 Trade Reg.Rep. (CCH) ¶ 75,277 (D.D.C.1974), distinguishes between costs of notice and costs of identifying absentee class members and holds that while, under *Eisen v. Carlisle & Jacquelin,* 417 U.S. at 177–79, 94 S.Ct. at 2152–53, plaintiffs must bear the costs of notice, defendants must bear the costs of supplying the absentee class members' names and addresses. Nonetheless, in *Foster,* the district court was not confronted with a situation in which the plaintiffs might compile the class identification as easily as the defendants. Moreover, since it was careful to point out that the class identification information was readily available to the defendant from its computer tapes: "[I]t is the defendant who has access to this information and not the plaintiffs." *Foster v. Maryland State Sav. & Loan Ass'n,* 1974–2 Trade Reg.Rep. (CCH) ¶ 75,277, at 97,837 n. 1, we do not regard it as establishing the *per se* rule that plaintiffs seek to press upon this court.

tions, the district court characterized the issue of identifying the absentee class members as one pertaining to discovery under the Federal Rules of Civil Procedure. The *Chevalier* court held that the class members' names and addresses contained in records in the possession of 22 defendant banks were discoverable and "[q]uite clearly . . within the ambit of rules 34 and 26(b) of the Federal Rules of Civil Procedure" and ordered the defendants to gather the class information. *Id.* at 148.

■ We disapprove of the suggestion, however, that the Federal Rules of Civil Procedure 26 through 37, which govern discovery of information "relevant to the subject matter [of a] pending action," Fed.R. Civ.Pro. 26(b), provide a proper model for analyzing this problem. While the spirit of those rules and the decisional law developed under them may offer guidance in resolving which party should furnish absentee class members' names and addresses, they should not control the question's final resolution. Rule 23(d) vests the district court, as manager of the class action, with the appropriate authority to enter whatever orders are necessary to the conduct of the action, *see Gordon v. Eastern Air Lines, Inc. (In re Air Crash Disaster at Florida Everglades on December 29, 1972)*, 549 F.2d 1006, 1012 n. 8 (5th Cir. 1977); *Calhoun v. Cook,* 469 F.2d 1067 (5th Cir. 1972), and resort to the discovery rules for the authority to enter such orders is unnecessary. When resolving whether the names and last known addresses of absentee class members are identifiable through reasonable effort, the district court must consider the relative ability of the parties to furnish identification of absentee class members. If those names and addresses are identifiable with reasonable effort, rule 23(c)(2)'s requirement of individual notice to class members is obligatory. The time and expense of gathering their names and addresses is a necessary predicate to providing each with notice of the action's pendency without which the action may not proceed. *Eisen v. Carlisle & Jacquelin,* 417 U.S. at 179, 94 S.Ct. at 2153. Viewed in this context, it becomes strikingly clear that rather than being controlled by the federal civil discovery rules, identification of absentee class members' names and addresses is part and parcel of rule 23(c)(2)'s mandate that the class members receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

■ Opposed to adopting a "rule of reason" approach to this matter, defendants urge us to hold that under *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140 (1974), plaintiffs, in their roles as class representatives, have a fiduciary obligation to their fellow class members to gather at their own expense the absentee class members' names and addresses. *See Pearson v. Ecological Science Corp.,* 522 F.2d 171, 177 (5th Cir. 1975), *cert. denied sub nom., Skydell v. Ecological Science Corp.,* 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976). We need not reach this question today, for under either approach, plaintiffs would be required to furnish at their own expense the necessary class information. Upon commencing a class action, the class representatives must be prepared to accept the concomitant responsibility of identifying absentee class members as well as paying the costs of their individual notice. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. at 176–79, 94 S.Ct. at 2152–53; *Freedman v. Amalgamated Sugar Co. (In re Sugar Industry Antitrust Litigation)*, 73 F.R.D. 322, 359–60 (E.D.Pa.1976). No peculiar circumstances exist which would warrant a departure from this general rule. Here the RDR cards, which are contained in approximately 100 boxes and set forth both the date and state in which each retail purchaser has obtained his or her vehicle, may be examined as readily by the class representatives as defendants. Moreover, as the relation between the parties is "truly adversary," *Eisen v. Carlisle & Jacquelin,* 417 U.S. at 178–79, 94 S.Ct. at 2153, no necessity exists to decide whether defendants must assist plaintiffs in identifying the class members other than to furnish them with the class identification information for their inspec-

tion. Accordingly, we hold that plaintiffs are required at their own expense to compile a list of the absentee class members' names and addresses from defendants' RDR cards.

We deal exclusively with preliminary expense and examination considerations. At the conclusion of the case, the district court may impose the costs of identifying the class members and notifying them of the suit as it would any other item of costs.

### C. "The Best Notice Practicable Under the Circumstances"

 At the hearing on preliminary approval of the proposed dealer defendant settlement, attorneys for plaintiffs and the dealer defendants stated initially that if the court formally approved the settlement, the proceeds were to be used to pay for the costs of notice of the case and the proposed partial settlement and financing the plaintiffs' costs of litigation. None of the proceeds, however, were to be used to pay the legal fees of plaintiffs' counsel.[17]

At this hearing, plaintiffs submitted a combination notice designed to inform absentee class members of the pendency of the case, their rights under rule 23(c)(2), and the proposed partial settlement with the California dealer defendants. They initially argued that a combination notice was appropriate because it provided a means of avoiding the expense of a double notice procedure to absentee class members, i. e., an initial class notice and a subsequent notice of proposed settlement to those class members who had not excluded themselves from the suit after receiving the initial notice. Later, when responding to the Nissan defendants' motion in opposition to the proposed combination notice, plaintiffs argued that because information concerning the proposed, partial settlement was material to the absentee members when making their decision whether to opt out or remain

in the action, a failure to inform the class of the proposed settlement would violate their due process rights. The district court ruled that the initial class notice was not to include information regarding the proposed settlement.

To support their contention that the district court properly exercised its discretion in excluding from the initial class notice any reference to the partial settlement, defendants assert that the proposed notice was a "virtual advertisement for the assertion of claims" from which one would conclude that the litigation had considerable merit, and the recipient could expect a substantial recovery from Nissan Japan and Nissan U.S.A. at a later date, whereas the partial settlement was dictated solely by the dealers' desire to avoid the immense expense of litigation in a far-off forum. They also point out that the settlement funds would not be disbursed to the class members but would only be used to defray the expense of the class notice and that plaintiffs' attorney admitted at the preliminary hearing on the proposed settlement that defendants' counsel would "go right through the ceiling" when he received the proposed notice.

 The essence of due process is that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. at 313, 70 S.Ct. at 656–57.

 To satisfy this principle, it is not only necessary that the notice reach the parties affected but that it convey the required information. *Id.* at 314, 70 S.Ct. at 657, *citing Grannis v. Ordean*, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363 (1914). As the Supreme Court noted in *Eisen v. Carlisle & Jacquelin*, 417 U.S. at 173–74, 94 S.Ct. at 2150–57, rule 23(c)(2)'s mandate that absen-

---

**17.** Counsel for Nissan Japan and Nissan U.S.A. did not attend this hearing since they were not entitled to object to the merits of the proposed settlement. *See Seiffer v. Topsy's Int'l, Inc.*, 70 F.R.D. 622, 631 n. 11 (D.Kansas 1976); *Wainwright v. Kraftco Corp.*, 53 F.R.D. 78, 81 (N.D. Ga.1971), *settlement approved*, 58 F.R.D. 9, 11–12 (1973).

tee class members be given "the best notice practicable under the circumstances" is consistent with this criterion and indeed goes beyond it.[18]

 Rule 23(c)(2) permits absentee class members in a 23(b)(3) action to exclude themselves from the case or remain a party and be bound by the final judgment. This procedure requires each absentee member to take affirmative action at the outset of the suit if he or she wishes to be excluded from the class. Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv.L.Rev. 356, 397–98 (1967). As Judge Wisdom explained in *Robinson v. Union Carbide Corp.*, 544 F.2d at 1262, it precludes "class members from delaying their decision about whether to join the action until the case reaches judgment. Such 'sideline sitting' could enable them to receive the benefits of a judgment in their favor and to avoid the res judicata effect of a decision against their interests. 3B Moore's Federal Practice ¶ 23.55 at 1160 (1975)."

Rule 23(c)(2) provides:

In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

While these requirements are absolute, they do not purport to be exclusive. Surely "the best notice practicable under the circumstances" cannot stop with these generalities. It must also contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member. *Robinson v. Union Carbide Corp.*, 544 F.2d at 1263–65; Tentative Draft, *Manual for Complex Litigation* § 1.45, at 71 (fourth revision July 21, 1976). This does not mean that they must be made cognizant of every material fact that has taken place prior to the mailing of their individual notice, *see Gold Strike Stamp Co. v. Christensen*, 436 F.2d at 798–99, or that class members must be given notice which is perfectly correct in its form. *Supermarkets General Corp. v. Grinnell Corp.*, 490 F.2d at 1185–86. For example, an overly detailed notice would not only be unduly expensive, *Gold Strike Stamp Co. v. Christensen*, 436 F.2d at 799, but would also confuse class members and impermissibly encumber their rights to benefit from the action. *Robinson v. Union Carbide Corp.*, 544 F.2d at 1265.

 Absentee class members will generally have had no knowledge of the suit until they receive the initial class notice. This will be their primary, if not exclusive, source of information for deciding how to exercise their rights under rule 23. Although absentee class members are customarily encouraged to make inquiry of the clerk of the district court where the case is filed if they have further questions, this worthwhile advice cannot justify omitting material information. This is particularly plain in a case such as the one at bar where class members are numerous and widely dispersed. Not only must the sub-

---

**18.** Writing for the Court, Mr. Justice Powell noted:

Petitioner further contends that adequate representation, rather than notice, is the touchstone of due process in a class action and therefore satisfies Rule 23. We think this view has little to commend it. To begin with, Rule 23 speaks to notice as well as to adequacy of representation and requires that both be provided. Moreover, petitioner's argument proves too much, for it quickly leads to the conclusion that no notice at all, published or otherwise would be required in the present case. This cannot be so, for quite apart from what due process may require, the command of Rule 23 is clearly to the contrary. *Eisen v. Carlisle & Jacquelin*, 417 U.S. at 176–77, 94 S.Ct. at 2152.

stantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action.[19] The standard then is that the notice required by subdivision (c)(2) must contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment. Viewed in this context, objective, neutral information concerning plaintiffs' proposed partial settlement with the dealer defendants should have been included in the court's initial notice. Subdivision (c)(2)'s mandate that absentee class members be given "the best notice practicable under the circumstances" demands it.

While class members are generally considered to be derivative rather than direct parties in a class action, they nevertheless have a definite stake in the controversy. Their legal rights are directly affected by its outcome. The partial settlement which is in question here has been already preliminarily approved, and it plainly affects absentee class members' rights. They are entitled to appear at the court's full scale hearing on its merits and present their views as to the settlement's fairness, adequacy, and reasonableness. *See* Tentative Draft, *Manual for Complex Litigation* § 1.46 (fourth revision July 21, 1976). If the initial class notice does not include information of the proposed settlement, however, an absentee class member lacks an essential factor in the decisionmaking equation. Furthermore, class members are entitled to consider whether the settlement proceeds should be used to finance the remainder of the litigation. They may be unwilling to risk the possibility that their substantive claims might fail and prefer that they be given their *pro tanto* share of the proceeds rather than continue to pursue their claims.

To withhold information of the proposed settlement on the theory that some absentee class members may want to assert their claims in another federal court independently of the present proceedings regardless of whether they are informed of the proposed settlement is counterproductive. This would only needlessly squander or dissipate those energies and resources that the class representatives, defendants, and the federal court system have already committed to resolving this controversy, thereby defeating one of the principal justifications for permitting any 23(b)(3) action to proceed from the outset, *i. e.,* that the "class action is superior to other available methods for the fair and efficient adjudication of the controversy . . . ." Fed.R.Civ.Pro. 23(b)(3). Additionally, it is at variance with the strong public policy which favors the fair settlement of judicial controversies. "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *D. H. Overmyer Co. v. Loflin,* 440 F.2d 1213, 1215 (5th Cir. 1971), *quoted with approval* in *Pearson v. Ecological Science Corp.,* 522 F.2d at 176. Finally, to exclude information of the partial settle-

---

**19.** *Freedman v. Amalgamated Sugar Co.,* (*In re Sugar Industry Antitrust Litigation*), 73 F.R.D. 322, 349 (E.D.Pa.1976) (Class members must be informed that they may be subject to defendants' potential counterclaims should defendants be found liable, and class members proceed to file damage claims.); *accord, Donson Stores, Inc. v. American Bakeries Co.,* 58 F.R.D. 485, 488–91 (S.D.N.Y.1973). *Bantolina v. Aloha Motors, Inc.,* 419 F.Supp. 1116 (D.Hawaii 1976) (In Truth-in-Lending class action subdivision (c)(2) notice must include information that class members' *pro tanto* recovery, if any, would be less than the minimum statutory

recovery for each class member if they were to opt out and prosecute their claims separately.), *accord, Agostine v. Sidcon Corp.,* 69 F.R.D. 437, 448 n. 13 (E.D.Pa.1975). *Republic Nat'l Bank of Dallas v. Denton & Anderson Co,* 68 F.R.D. 208 (N.D.Tex.1975) (When unnamed members of class were relatives of defendant's management or were defendant's employees, such that personal conflict might give absentee members a substantial interest in not participating in litigation, class notice should be sufficiently specific so that class members would have an adequate opportunity to decide whether to withdraw from the class.)

ment is also inconsistent with the Advisory Committee's aim of expanding and enhancing the res judicata effect of each 23(b)(3) action to the extent consistent with due process. *Advisory Committee's Note to Rule 23*, 39 F.R.D. 98, 98–99 (1966). *See generally* Frankel, *Some Preliminary Observations Concerning Civil Rule 23*, 43 F.R.D. 39, 43–45 (1967). The binding scope of the present action would be directly diminished by that number of class members who decided to opt out of the action but who otherwise would have utilized the class action device if information of the proposed settlement had appeared in their subdivision (c)(2) notice. Informing the absentee class members of the proposed partial settlement will further all three of these strong federal judicial interests.

An ancillary but nonetheless relevant justification exists for combining the two notices when, as here, a notice may readily be written which protects the rights of absentee class members without prejudicing the claims of nonsettling defendants. Explaining the law suit as it has developed to date in objective, neutral terms which do not prejudice the rights of nonsettling defendants, though requiring careful drafting, it is far from impossible. Combining the two notices will substantially reduce the costs of the litigation and thereby prevent an unnecessary depletion of the settlement proceeds. This is a legitimate factor which the district court must consider when devising the "best notice practicable under the circumstances . . . ." *See Gold Strike Stamp Co. v. Christensen*, 436 F.2d at 799. *Compare Advisory Committee's Note* to *Rule 23*, 39 F.R.D. 95, 102–04 (1966) *with* Fed.R.Civ.Pro. 1 which provides that the "[Federal Rules of Civil Procedure] shall be construed to secure the just, speedy, and inexpensive determination of every action." *See also* Tentative Draft, *Manual for Complex Litigation* § 1.45, at 74–75 (fourth revision July 21, 1976). The objection that a combination notice will be confusing to ab-

sentee class members with resultant prejudice to their rights outweighing possible benefits is also insubstantial. Combination notices have been approved in cases involving proposed complete settlements, *see, e. g., Greenfield v. Villager Indus., Inc.*, 483 F.2d 824 (3d Cir. 1973), and in at least one case involving a proposed partial settlement. *In re Arizona Bakery Products Litigation*, 1975–2 Trade Reg.Rep. (CCH) ¶ 60,-556 (D.Ariz.1975). Moreover, it is difficult to understand how receiving information of the present action and the proposed settlement at separate times would be any less confusing than receiving notice of both at once.[20]

Assuming some merit exists in defendants' argument that the "combination" notice is a "virtual advertisement for the assertion of claims," does not change the result. The court still must decide whether including information of the proposed partial settlement fulfills the informative function that subdivision (c)(2) must provide. If the district court was persuaded that the proposed notice did not adequately describe the reasons why the dealer defendants were settling, the solution was to draft an objective, neutral notice rather than to give two separate notices.

The orders of the district court are vacated and remanded for proceedings not inconsistent with this opinion.

**VACATED AND REMANDED.**

20. The Tentative Draft, *Manual for Complex Litigation* § 1.46 (fourth revision July 21, 1976) suggests appropriate information to include when describing a proposed settlement to absentee class members.